SALTER, J.
 

 Altamonte Springs Imaging, L.C., an in-tervenor below, appeals a final circuit court consent judgment certifying a class, approving a settlement agreement, and awarding fees to the class representative and its attorneys. The lawsuit is based on the alleged failure of State Farm Mutual Automobile Insurance Company to correctly compute and pay the amounts due medical providers for magnetic resonance imaging services under section 627.736(5)(b)5, Florida Statutes (2001). We affirm the final judgment in all respects.
 

 I.
 
 CPI, MRI, PIP, and Commonality
 

 The legislature enacted section 627.786(5)(b)5 in 2001 to provide consumer price index (CPI) adjustments for magnetic resonance imaging (MRI) reimbursements in personal injury protection (PIP) claims. Although the statutory language was refined over the next few years,
 
 [1]
 
 a number of PIP insurers and MRI providers sparred over the manner in which the CPI adjustments should be computed and paid. Some insurers, including State Farm, apparently did not pay the adjustments for certain years because of the alleged interpretive issues.
 

 To place the issue in perspective, allowed amounts for MRI services are typically between $1,000 and $2,000, and the average CPI adjustments (increases) per year have been between
 
 3%
 
 and 5%. There are thousands of these claims for PIP reimbursement in Florida each year. If an insurer failed or refused to pay the correctly-adjusted amount and the MRI provider later prevailed in a county court action to obtain the adjustment — often an amount between $20 and $200 — the Florida Insurance Code fee-shifting provision
 
 [2]
 
 
 *853
 
 mandated an award of attorney’s fees and costs to the MRI provider.
 

 It is difficult to imagine a group of claims better suited for class adjudication. The claims are brought by a particular group under a particular statute, and the judicial economy obtained in a class action resolving thousands of such claims is obvious. An economic analysis regarding the efficiency of thousands of county court cases involving single claims averaging $100 and transactional costs (legal fees alone, and putting aside the costs incurred by the State’s judicial branch) of ten to a hundred times that, does not require extended number-crunching.
 

 II.
 
 The Class Action and Proposed Settlement
 

 Appellee and class plaintiff below, Open MRI of Miami-Dade, Ltd., commenced a circuit court action in 2004 on behalf of itself and other MRI providers allegedly denied the correct CPI adjustments by appellee-defendant State Farm. Following various motions and class-related discovery, Open MRI and State Farm entered into a proposed class action settlement agreement and sought court approval to notify over 14,600 putative class members regarding the proposed terms. The court entered a preliminary order
 
 [3]
 
 regarding the proposed settlement and conditionally certifying the three classes proposed by the parties: a settlement class (all providers that billed State Farm for MRI services and were paid, but without the CPI adjustment), a declaratory judgment class (a mandatory class including all class members), and a money damages class (all members who have not opted out and share in the settlement funds). The preliminary order also scheduled a fairness hearing for a date well after the period allowed for mailings and other contacts with putative class members.
 

 III.
 
 ASPs Intervention and Objections
 

 ASI provides MRI services in central Florida and has previously obtained several judgments against State Farm for CPI adjustment claims under section 627.736(5)(b)5.
 
 [4]
 
 In response to the notice and preliminary order regarding the proposed class action settlement, ASI moved to intervene. That motion was granted, and ASI submitted an opposition to the proposed settlement.
 

 ASI ultimately represented that it had approximately 380 claims against State Farm that would be included in the class and the settlement, and it objected to class certification and approval of the settlement on a broad assortment of grounds. Procedurally, ASI claimed that it had been denied adequate notice of the settlement terms and an adequate opportunity to obtain certain discovery. Regarding class certification, ASI argued that the interests of the class members were too divergent to satisfy the commonality, typicality, and adequacy requirements imposed by Florida Rule of Civil Procedure 1.220(a). Regarding the proposed settlement, ASI asserted that the declaratory relief provision — essentially an injunction precluding class members from filing any suit in Florida seeking any computation of the statutory CPI adjustment
 
 *854
 
 other than as set forth in the settlement agreement — would preclude ASI and other claimants from exercising “opt out” rights and their rights under existing judgments. ASI also objected to the amount to be paid the class representative ($10,000) and to the attorneys for Open MRI and the class ($485,000). These objections were rejected by the trial court, and we review those findings under the abuse of discretion standard of review.
 
 Allstate Indem. Co. v. De La Rosa,
 
 800 So.2d 245 (Fla. Bd DCA 2001) (findings supporting certification of a class under Rule 1.220);
 
 Ramos v. Philip Moms Cos.,
 
 743 So.2d 24 (Fla. 3d DCA 1999) (findings supporting settlement of the class member claims). We apply heightened scrutiny to the simultaneous certification of the class and class settlement, however, to assure that absent class members are adequately protected.
 
 Grosso v. Fidelity Nat’l Title Ins. Co.,
 
 983 So.2d 1165, 1170-71 (Fla. 3d DCA 2008).
 

 A.
 
 Adequate Notice; Discovery
 

 ASI filed its objections to the proposed settlement on October 23, 2007, over three months before the fairness hearing. Although it alleged in the objections that it had not directly received a copy of the preliminary order and class notice, there is no doubt that ASI received the notice package (including the Order Preliminarily Approving Settlement Agreement and Conditionally Certifying Classes for Settlement) sufficiently in advance of October 22, 2007, (the date of service of its objections), to permit its counsel to prepare a detailed twenty-page memorandum of law summarizing ASI’s objections. The trial court did not abuse its discretion in determining that ASI had adequate notice of the terms and effect of the proposed class certification and settlement.
 

 ASI’s request for production of documents, served only three days before the fairness hearing, did not address the putative class members’ identities or claims. Rather, ASI sought three categories of documents: (1) any settlement or confidentiality documents other than the proposed class settlement agreement, (2) communications with legal counsel regarding any negotiations or settlements other than the proposed class settlement agreement, and (3) copies of checks paid by State Farm to “any and all legal counsel or their clients who objected to the class action, intervened in the class action, appealed any portion of the class action and/or opted out of the class action.” State Farm objected to the request on numerous grounds, and ASI provided no evidence to suggest collusion or “buy offs” of any objectors or their counsel as a predicate for such discovery.
 

 The trial court correctly declined to postpone the fairness hearing to permit ASI’s last-minute discovery to proceed. ASI made no further showing that any such discovery would bear on the Rule 1.220 factors or an assessment of the fairness of the settlement as to ASI. ASI had over three months from its receipt of the notice package within which to seek discovery regarding the proposed attorney’s and class representative fees, the adequacy of Open MRI as a representative, and other details regarding the class and settlement.
 

 B.
 
 Certification of the Class
 

 As previously noted, ASI’s objections to class certification based on the requirements of Rule 1.220(a) were not well taken. The putative class members’ claims were concededly numerous. They arose from a common statutory provision and were asserted by a single type of medical service provider (MRI providers) against a single PIP insurer. Open MRI’s
 
 *855
 
 claim was a typical claim asserted by a putative class member. Open MRI showed that it could fairly and adequately represent the class,
 
 [5]
 
 and that its counsel were experienced and capable. Under Rule 1.220(a), its federal counterpart, and too many state and federal cases to warrant further citations, Open MRI and State Farm established that the class action lawsuit was a textbook case for certification.
 

 ASI’s objections to certification based on Rule 1.220(b) were more nuanced, but were also unfounded. Once the requirements of Rule 1.220(a) are satisfied, Rule 1.220(b)(1)(A) permits a class claim to be certified if the prosecution of the claim against individual members of the class would create a risk of “inconsistent or varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for the party opposing the class.” In this case, different county courts had used different computations for the statutory CPI adjustment.
 

 One problem occurred with the application of the 2001 and 2003 versions of section 627.736(5)(b)5. Neither the index nor the date for the annual adjustment was clearly stated. These details were provided in the amendment effective October 1, 2003. Ch.2003-411, § 8, at 3837, Laws of Fla. The lack of clarity before the amendment allowed for varying interpretations regarding the exact method and timing for CPI adjustments.
 

 There is an additional issue that can be referred to as the “compounding” issue. ASI takes the position, as the Fourth District Court of Appeal has held in
 
 Progressive Auto Pro Insurance Co. v. One Stop Medical, Inc.,
 
 985 So.2d 10 (Fla. 4th DCA 2008), that the annual increases are to be compounded:
 

 [T]he CPI adjustment for each year should compound so that one multiplies the base charge by each year’s adjustment. For example, if 2001 had a 5% inflation rate and 2002 a 6% rate, the correct formula for a 2003 MRI would be a base charge x 1.05 x 1.06, and so on, unless or until the legislature resets the base year.
 

 Id.
 
 at 15 n. 1. The statutory provision can just as easily be applied, however, as the Open MRI-State Farm settlement applies it. Under the settlement, the base amount is adjusted annually, but without compounding. In the example and methodology in the
 
 Progressive Auto
 
 footnote, the 2003 rate would be 11.3% above the base year (2001) rate, while the Open MRI-State Farm settlement agreement rate for 2003 would be 11.0% above that rate. The difference occurs because of the compounding effect of multiplying each year’s increase cumulatively rather than simply adding the annual increase to the rate established for the preceding year.
 

 There is another difference. The CPI figures published by the Bureau of Labor Statistics that are to be used in these adjustments are rounded to the nearest tenth, but the percentage increases can be computed to four or more decimal places, or they can be rounded up or down to a lesser number of decimal places. The Open MRI-State Farm class settlement method uniformly rounded the annual percentage
 
 up
 
 to the nearest one-tenth of one percent. An annual increase of 5.001% would be rounded up to 5.1%, for example.
 

 
 *856
 
 The need for mandatory declaratory relief regarding the statutory adjustment method was also established in conformance with Rule 1.220(b)(2). State Farm was shown to have refused to apply a method applicable to the entire class. The opt-out provision in the settlement allows a claimant to seek various categories of money damages (attorney’s fees and costs, postal costs, penalties, and bad faith claims based on “unfair trade practices,” pursuant to section 627.736(11), Florida Statutes (2007), for example), but the predominant feature of the settlement is a uniform interpretation of the CPI adjustment as directed by the legislature.
 

 The lack of uniformity otherwise confounding a PIP insurer such as State Farm is seen in the variety of computational outcomes evidenced in the county court judgments throughout the State and in the record; in the interpretation applied by the Fourth District in the
 
 Progressive Auto
 
 case; and in the different types of claims (temporally, based on the statute’s evolution) identified by the Second District Court
 
 of
 
 Appeal in
 
 Atlanta Casualty Co. v. Open MRI of Pinellas, Inc.,
 
 911 So.2d 135 (Fla. 2d DCA 2005). The goal of “no fault” insurance was to reduce litigation, not to spread it virally throughout the State.
 

 C.
 
 Fairness of the Settlement
 

 ASI’s primary objection to the fairness of the proposed settlement was that it would obtain less money as a result of the statutory CPI adjustments imposed by the settlement than ASI (or other putative class members) would obtain in standalone single-claim county court lawsuits. The arithmetic demonstrates that this claim is unfounded.
 

 Using a hypothetical MRI reimbursable amount of $1,000 and actual CPI Medical Care figures from the Consumer Price Index for all Urban Consumers in the South Region (as determined and published by the Bureau of Labor Statistics of the U.S. Department of Labor) for June 30, 2001, through June 30, 2005, for comparison purposes, the settlement agreement adjustments would be:
 

 June 30, 2001
 
 [6]
 
 265.4 Base ($1,000.00 payable)
 

 June 30,2002 276.2 4.1% ($1,041.00 payable)
 

 June 30,2003 287.3 8.3% ($1,083.00 payable)
 

 June 30,2004 299.8 13.0% ($1,130.00 payable)
 

 June 30,2005 311.8 17.5% ($1,175.00 payable).
 

 Computing the amounts payable using the cumulative and compounding adjustments as urged by ASI, and as applied by the Fourth District in
 
 Progressive Auto,
 
 would produce these figures:
 

 June 30, 2001 265.4 Base ($1,000.00 payable)
 

 June 30, 2002 276.2 4.0693% ($1,040.69 payable)
 

 June 30, 2003 287.3 4.0188% ($1,082.51 payable)
 

 June 30, 2004 299.8 4.3509% ($1,129.61 payable)
 

 June 30, 2005 311.8 4.0027% ($1,174.82 payable)
 

 From these figures it can be seen that the difference between the two methodologies is extremely small, and that the settlement’s procedure for “rounding up” to the nearest one-tenth of one percent counterbalances the compounding feature of the alternative urged by ASI. The class settlement also provides for statutory prejudgment interest to be added to any adjustment amounts from the due date to the date of payment.
 

 Further, the opt-out provisions permit an MRI provider to decline the settlement terms as to any remedy other than the CPI adjustment computation itself. Claims for attorney’s fees under prior or existing judgments, claims alleging bad faith under section 624.155,
 
 [7]
 
 and any other
 
 *857
 
 claims, are thus preserved. The only mandatory aspect of the settlement involves the statutory CPI adjustment. Because the computational method rounds
 
 up
 
 the applicable percentage and is otherwise fair, and because the opt-out provision preserves all other remedies to the claimants, the trial court did not abuse its discretion in finding that the settlement as a whole is fair.
 

 D.
 
 Class Representative Payment and Attorney’s Fees
 

 Importantly, the payments to Open MRI as class representative ($10,000) and to the attorneys for the plaintiffs ($485,-000) were paid by State Farm and not from the sums recoverable by class members. While the trial court and this court must review the fees for reasonableness, it is highly significant that the class members bear no part of that particular burden. An adversary, State Farm, has made its own preliminary assessment of reasonableness.
 

 The trial court correctly found that a payment of $10,000 to Open MRI as representative plaintiff was reasonable. The position as fiduciary for the class is less an honor than a headache. The representative plaintiff is identified as a class litigant in public records (potentially affecting credit reports and disclosures for financing), is subject to fiduciary duties to the class, may be deposed and required to produce records, and must meet with counsel and appear in court, for example.
 

 The attorney’s fees were supported by a reviewing attorney’s affidavit, an affidavit from an attorney with each of the two firms providing legal support to the plaintiff, and summaries of hours and hourly rates. Following the disclosure of the anticipated range of legal fees in the motion for certification and to approve settlement in 2007, ASI intervened but did not serve requests for production of the supporting daily time entries or seek to depose the attorneys who performed the work.
 

 An objector’s protestations that such daily time records were not filed does not establish that the affiants perjured themselves or that the fees are disproportionate to the benefits obtained. ASI’s protestations are particularly hollow in light of the legal fees that could be incurred if over 14,600 separate county court actions, each with a small sum in controversy but a reasonable legal fee for the prevailing claimant, were to proceed as an alternative to class disposition. In any event, the trial court correctly considered and applied the factors applicable to an award of attorney’s fees in such cases under
 
 Kuhnlein v. Department of Revenue,
 
 662 So.2d 809 (Fla. 1995).
 

 IV.
 
 Conclusion
 

 In its effort to allow MRI providers reasonable annual inflationary adjustments based on changes in the CPI, the legislature inadvertently spawned competing interpretations and the potential for thousands of micro-lawsuits in which attorneys would recover far more than the adjustments payable to the MRI providers. The Open MRI-State Farm class action provided a vehicle for the efficient and statewide resolution of such claims against one of the largest PIP insurers. The trial court correctly certified the class, considered and approved the settlement, and approved an award of attorney’s fees and costs paid by the settling insurer (and not from the sums payable to class members). The provision for opt-outs allowed class member claimants, including ASI, to recover their CPI adjustments as computed in a fair interpretation of the controlling statute
 
 *858
 

 and
 
 to seek any other penalties, fees, or other amounts available by law.
 

 Affirmed.
 

 [1]
 

 . The original version of the provision specified an adjustment to a formula based on the Medicare Part B allowed MRI reimbursement amount to compensate for any increase in the "medical Consumer Price Index for Florida," and did not identify a base month for annual adjustments. Later amendments clarified that the CPI adjustment would occur for 12-month periods ending June 30 of each year and that the pertinent index figures would be the "Medical Care Item of the Consumer Price Index for All Urban Consumers in the South Region as determined by the Bureau of Labor Statistics of the United States Department of Labor."
 

 [2]
 

 . § 627.428, Fla. Stat. (2007).
 

 [3]
 

 . The appellant, Altamonte Springs Imaging (ASI), appealed this preliminary order as well as the final judgment. That appeal, our Case No. 3D07-3009, was consolidated with ASI's appeal from the final judgment.
 

 [4]
 

 . Three such judgments submitted by ASI were entered by the county courts in Orange and Osceola Counties, and were for recoveries of $27.48 each, plus prejudgment interest. ASI and its counsel did not disclose the amount of any attorney's fees and costs recovered in those three lawsuits.
 

 [5]
 

 .
 
 Although ASI argued that Open MRI has an inherent conflict of interest vis-á-vis claimants who have already obtained judgments on their claims, that argument proceeds on the mistaken assumption that any such “judgment creditor claimants” will take less from the class settlement than from a judgment. No such showing has been made.
 

 [6]
 

 . These are the base and adjustment dates used for reimbursement amounts during the year beginning the next August 1 and through July 31 of the following year.
 

 [7]
 

 . This is a category of claim mentioned by ASI, and we express no opinion one way or the other regarding the viability or sufficiency of such a claim.